IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

ROBERT D. BYER and :
NIJOLE BYER, his wife :
:
vs. :
:
BELL HELICOPTER TEXTRON, INC., :
et al. : 1:12 CV 676

Motion Hearing in the above-captioned matter held Tuesday, August 21, 2012, commencing at 11:26 a.m., before the Honorable H. Kenneth Schroeder, in the United States Courthouse, 68 Court Street, Buffalo, New York, 14202.

RECORDED BY ELECTRONIC SOUND RECORDING
TRANSCRIBED BY DEBRA L. POTOCKI, RMR, RDR, CRR
Official Court Reporter for the U.S. District Court
P.O. Box 835
Charleston, SC 29402
843/723-2208

A P P E A R A N C E S

LIPSITZ & PONTERIO, LLC
By: John P. Comerford, Esquire
135 Delaware Avenue
Buffalo, NY 14202
Appeared for Plaintiffs.

THE LANIER LAW FIRM
By: Darron Berquist, Esquire, via telephone
126 East 56th Street, 6th Floor
Ne York, NY 10022
Appeared for Plaintiffs.

SMITH, MURPHY & SCHOEPPERLE, LLP
By: Bonnie T. O'Connor, Esquire
295 Main Street, Suite 786
Buffalo, NY 14203
Appeared for Union Carbide and Dana Corporation.

DAMON & MOREY, LLP
By: Carol G. Snider, Esquire
200 Delaware Ave., Suite 1200
Buffalo, NY 14202
Appeared for Insulation Distributors, Inc.

GOLDBERG SEGALLA, LLP
By: Susan E. VanGelder, Esquire
665 Main Street, Suite 400
Buffalo, NY
Appeared for Eaton Corporation.

HURWITZ & FINE, PC
By: V. Christopher Potenza, Esquire
1300 Liberty Building
Buffalo, NY 14202
Appeared for Harco Laboratories, Inc.

PHILLIPS LYTLE, LLP
By: Marc W. Brown, Esquire
3400 HSBC Center
Buffalo, NY 14203
Appeared for Goodyear Tire and Rubber Co.

RUPP, BAASE, PFALZGRAF, CUNNINGHAM & COPPOLA, LLC
By: Lisa A. Coppola, Esquire
1600 Liberty Building
Buffalo, NY 14202
Appeared for BASF Corporation.

GLAZIER & YEE
By: Guy P. Glazier, Esquire, via telephone
707 Wilshire Boulevard
Los Angeles, CA 90017
Appeared for Lockheed Martin.

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
By: Arthur D. Bromberg, Esquire, via telephone
425 Eagle Rock Avenue, Suite 302
Roseland, NJ 07068
Appeared for Lockheed Martin.

SEDGWICK LLP
By: Matthew Childs, Esquire, via telephone
Appeared for General Electric and CBS Corporation.

LAVIN, O'NEIL, RICCI CEDRONE & DiSIPIO
By: Lauren Berk, Esquire, via telephone
One East Main Street, Suite 1000
Rochester, NY 14614
Appeared for 3M Company.

McGIVNEY & KLUGER, PC
By: Eric M. Gernant, II, Esquire, via telephone
80 Broad Street, Floor 23
New York, NY 10004
Appeared for Lehigh Gasket Company.

HARRIS BEACH, PLLC
By: Michael Masino, Esquire, via telephone
99 Garnsey Road
Pittsford, NY 14534
Appeared for Honeywell International, Inc. and Curtiss-Wright.

K&L GATES, LLP
By: David Oxamendi, Esquire, via telephone
599 Lexington Avenue
New York, NY 10022
Appeared for Schneider Electric USA, Inc. and Craneco.

LaSORSA & BENEVENTANO
By: Thomas M. Beneventano, Esquire, via telephone
3 Barker Avenue, 2nd Floor
White Plains, NY
Appeared for Armstrong International, Inc.

McCARTER & ENGLISH, LLP
By: Richard P. O'Leary, Esquire, via telephone
245 Park Avenue, 27th Floor
New York, NY 10167
Appeared for Parker Hannifin Corporation.

McELROY, DEUTSCH, MULVANEY & CARPENTER
By: Aileen E. McTiernan, Esquire, via telphone
88 Pine Street, 24th Floor
New York, NY 10005
Appeared for Rockwell Automation.

LEWIS, BRISBOIS, BISGAARD & SMITH
By: Philip O'Rourke, Esquire, via telephone
77 Water Street
New York, NY 10005
Appeared for Henkel Corporation.

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
By: Eric C. DiMarco, Esquire, via telephone
150 East 42nd Street
New York, NY 10017
Appeared for Boeing; McDonnell Douglas; McCauley Propeller; Lycoming.

TUCKER, ELLIS & WEST, LLP
By: Henry Billingsley, Esquire, via telephone
925 Euclid Avenue
Cleveland, OH 14415
Appeared for United Technologies Corporation.

COLUCCI & GALLAHER
By: Jason A. Botticelli, Esquire, via telephone
424 Main Street
Buffalo, NY 14202
Appeared for Niagara Insulations, Inc.

THE CLERK: The case this morning is Byer versus Bell Helicopter Textron, Inc., et al., Case No. 12-CV-676.

Would counsel in the courtroom please state their appearances for the record.

MR. COMERFORD: John Comerford, Lipsitz and Ponterio, on behalf of the plaintiff.

MS. O'CONNOR: Bonnie O'Connor, Smith, Murphy and Schoepperle, local counsel for Darger, Errante, Yavitz and Blau, attorneys of record for Dana Corporation and Union Carbide Corporation.

MS. SNIDER: Carol Snider from Damon and Morey, counsel of record for Insulation Distributors, Inc.

MS. VanGELDER: Susan VanGelder, Goldberg Segalla, on behalf of Eaton Corporation.

MR. POTENZA: Chris Potenza, Hurwitz and Fine, counsel of record for Harco Laboratories, Inc.

MR. BROWN: Marc Brown, Phillips Lytle, on behalf of the Goodyear Tire and Rubber Company.

MS. COPPOLA: Lisa Coppola from Rupp Baase, on behalf of BASF Corporation.

THE CLERK: And would counsel on the teleconference please state their appearances for the record.

MR. GLAZIER: This is Guy Glazier on behalf of Lockheed Martin Corporation. With me is my partner, Laura Yee, and my local counsel, Art Bromberg.

THE COURT: Okay. I'm going to --

MR. CHILDS: Good morning, this is Matthew Childs from Sedgwick LLP. I'm on the phone for General Electric and for CBS Corporation.

MS. BERK: Lauren Berk from Lavin O'Neil for 3M.

MR. GERNANT: Good morning. This is Eric Gernant from McGivney and Kluger on behalf of Aerostar Aircraft Corp. and Lehigh Gasket Company.

MR. MASINO: This is Mike Masino from Harris Beach; I'm on for Honeywell and Curtiss-Wright.

MR. OXAMENDI: David Oxamendi from K&L Gates on the phone for CraneCo and Schneider Electric USA, Inc.

MR. BENEVENTANO: This is Tom Beneventano on the phone for Armstrong International.

MR. BERQUIST: This is Darron Berquist from the Lanier Law Firm for plaintiffs.

MR. O'LEARY: Richard O'Leary, McCarter and English, for Parker Hannifin Corporation.

MS. McTEIRNAN: Aileen McTiernan, McElroy, Deutsch, Mulvaney and Carpenter for Rockwell Automation.

(Two parties speaking at once.)

MR. BOTTICELLI: Jason Botticelli from Colucci and Gallaher for Niagara Insulation.

MR. O'ROURKE: Phil O'Rourke of Lewis, Brisbois, Bisguard and Smith for Henkel Corporation.

THE COURT: Is that everybody?

MR. DiMARCO: Eric DiMarco from Wilson Elser on behalf of Boeing, McDonnell Douglas, McCauley Propeller, Lycoming.

MR. BILLINGSLEY: This is Henry Billingsley from Tucker Ellis on behalf of UTC.

THE COURT: Is there anybody who hasn't spoken?

MR. COMERFORD: Your Honor, if I may say that the defendant who is opposing this, Art Bromberg, he's on the phone, but he didn't list his appearance.

Art, can you hear us? Lockheed Martin Corporation, Your Honor.

THE COURT: Right, I have the faxed letter.

MR. GLAZIER: Art is on the phone with us; it is fairly difficult to hear you.

THE COURT: Mr. Bromberg? Is Mr. Bromberg there? Mr. Bromberg?

MR. BROMBERG: Hello?

THE COURT: Hello?

MR. BROMBERG: I am on; I just dropped the call, but I am back.

THE COURT: And who do I have? Who just dropped the phone?

MR. BROMBERG: Your Honor, this is Art Bromberg, Your Honor.

THE COURT: Okay.

MR. BROMBERG: I'm back on the call for Lockheed.

THE COURT: All right, so we have everybody now? I gather by the silence, we do. All right.

I'm going to cut right to the chase. I've read the faxed letters. As I understand the issue, the deposition of the plaintiff was taken as a discovery deposition over a period of days. It was completed. Shortly after the completion of the discovery deposition, plaintiff's counsel then noticed a deposition of the plaintiff, claiming that plaintiff is in extremis, or poor health, and there's a question as to the plaintiff's viability at the time of trial. And for that reason, now seeks to take what would be legally characterized as a de bene esse deposition, namely, a trial deposition as compared to a discovery deposition.

Objection has been made to that notice by counsel for Lockheed; I assume perhaps some others have joined in that motion; I'm not quite sure.

But in any event, that's what I see as the issue, whether the plaintiff will be able to conduct a trial deposition of the plaintiff, since there has just been completed in recent time, the discovery deposition.

The legal issue is whether the plaintiff has made appropriate application by pursuant to a motion with the Court to have such a deposition. As I understand Lockheed's

objection, that failure to do it by way of motion causes the notice to be invalid, and, therefore, the notice should be stricken.

Rather than get into a philosophical discussion of form over substance or substance over form, it appears to me that -- and I realize there is also a motion pending to have this case remanded to State Court -- that in order to cut through all of this and to prevent justice from not being fully served, it seems to me that, one, whether there is a trial deposition or not, and the case is tried in State Court or in Federal Court, that deposition, if there is such a deposition, would be admissible both under the CPLR of the State of New York as a trial deposition, and if the case remains in Federal Court, under the Federal Rules of Civil Procedure, Rule 32, it would also be admissible as a trial deposition.

There is Second Circuit case law wherein and whereby the Court of Appeals has found that such use of the deposition at trial would be permissible. And I am making reference to the case of Manley versus Ambase Corporation, 337 F.3d 237, decided by the Court of Appeals for the Second Circuit on July 28, 2003.

It seems to me, in trying to be as practical as possible, realizing that there has just been these lengthy days of deposing the plaintiff, and the expense that was incurred,

that in the interest of justice, other than the expense issue, nobody really gets hurt, either from the point of view of the defendants or the point of view of the plaintiff, by having the de bene esse deposition conducted, even if the case is ultimately tried in the State Court.

The trial deposition would then necessitate, as I view it and as I would recommend, that the deposition be taken with objections being recorded as though you were at trial, the basis for the objection and so forth; rather than, at least the standard practice here in the Western District of New York, of reserving objections except as to form.

That way, if the case goes to trial and it becomes necessary to use the trial deposition or the de bene esse deposition, all of the objections will be there for the trial judge beforehand, and there could probably be either a pretrial conference to resolve those objections, or they would be resolved, I would assume, perhaps in the form of a motion in limine.

But once again, it seems to me that by taking this approach, the interests of justice is served; in the event the plaintiff does die, there will be at least a full complete record of testimony and cross-examination under the rules of evidence for consideration as that deposition is admitted by a jury -- I'm assuming it will be a jury trial -- and then the chips will fall where they may. As opposed to standing on a

technicality that could take time to resolve, in the meantime, based on what I'm led to believe, the plaintiff may not be around, once those issues have been resolved in a very technical formal way through the Court process.

So unless somebody can convince me that that would be a miscarriage of justice, I see no reason why the deposition shouldn't go forward as a trial deposition or as a de bene esse deposition, so that we can get this all under way, get it completed as quickly as possible and let the case take its course.

Having said that, I'll listen to counsel for Lockheed, since Lockheed is the one that filed the objection, or at least made the objection known by way of the letter.

MR. GLAZIER: Thank you, Your Honor, this is Guy Glazier on behalf of Lockheed Martin Corporation.

Can you hear me okay, Your Honor?

THE COURT: We can hear you, yes.

MR. GLAZIER: Thank you, Your Honor. And I appreciate the Court's consideration allowing telephonic appearance for this proceeding. We certainly appreciate that. It is exactly the interests of justice that compel our motion for protection in this case.

Your Honor, the gravamen of the issue here is opportunity. And Rule 30, combined with Rule 26, really doesn't give the Court even any discretion to allow this second deposition to

proceed.

Without leave, the party may take one deposition. With leave, according to Rule 30, a party must obtain leave of court consistent with Rule 26(b)(2). Rule 26(b)(2) subsection (C) requires that the Court must limit frequency and extent of discovery, on a finding that the party seeking discovery has had ample opportunity to obtain the information by discovery in the action.

In this case, Your Honor, there have been seven days of deposition in this case, with the plaintiff conducting examination during that period of time, and having with them a videographer and video equipment, if they wanted at any time to take video de bene esse deposition, to the extent that there is any distinction between a de bene esse deposition and any other type of deposition.

I think probably one of the most telling pieces of information in this proceeding, Your Honor, is plaintiff's exhibit, the declaration of Dr. William Salier, which they rely upon to say we must do this de bene esse deposition. That declaration was signed, if you look at page two, on August 6th. And August 6th is two days before the original deposition in this case. Nothing has changed between the original notice of deposition in this case, with seven days of deposition that occurred in this case, and today.

There were 40 defendants represented by 31 attorneys, 14

of them present in the room for seven days in Florida, who stayed there, took this deposition, listened to plaintiff's counsel take the deposition, and then formally and officially closed out that deposition, and then got on airplanes and went home. Hours later, we get notice that we're not done, we're going to have a second deposition.

We are throwing the Rules of Civil Procedure and the manner in which discovery is taken in federal cases, out the window, if we proceed with this second deposition in this case, Your Honor.

Nothing has changed between the first notice of deposition and today, and that's critical.

Strategic decisions were made by defendants in this case in examining the witness, in logistics concerning the deposition, under the Federal Rules of Civil Procedure. And those strategic decisions are the matter of justice that needs to be taken care of in this case, Your Honor. It is the exact interests of justice that are concerned here.

Giving the plaintiff another shot, after several days of preparation, after strategic decisions were made at the only deposition authorized in this case, is simply throwing the interests of justice out the window, with all due respect, Your Honor.

THE COURT: Let me ask plaintiff's counsel, what new information or what is it that would be obtained by conducting

a second deposition so shortly after the completion of the first deposition?

MR. COMERFORD: Your Honor, on day one -- This is John Comerford. On day one, Your Honor -- Should I sit, Your Honor?

THE COURT: Whichever way you're comfortable.

MR. COMERFORD: I'll proceed here, Your Honor.

Your Honor, you have extensive trial experience before you took the bench. It is fundamental in any case where a gentleman like myself has the burden of proof, we were going to do a video testimony. If this case has to be tried to verdict, to ask 12 jurors to sit and have a third party read a cold transcript, is near impossible. The plaintiff has a fundamental right, Your Honor, to have video testimony taken to preserve his case.

Without hearing and seeing the plaintiff, the jury in this case will really have no idea the exposures that took place, they'll have no idea the pain and suffering he went through. On the flip side, these are very skilled lawyers who I anticipate will cross-examination the plaintiff. And the defendants will have an opportunity to have their cross-examinations preserved.

But day one, Your Honor, and I have my notice here when I noticed this deposition, and I have it here, it's dated August 2nd, I said to all the defendants in this case -- and

I'll read this slowly -- "The video deposition of plaintiff will commence immediately upon the conclusion of the discovery deposition and will continue day to day until completion."

There's no surprises here. I've been representing plaintiffs in asbestos mesothelioma actions for 18 years. It is fundamental that a video trial testimony is taken to preserve this dying man's case.

THE COURT: Why wasn't the video when you took the discovery deposition?

MR. COMERFORD: Because a compromise was taken, Your Honor, and I'll get to that. And I have the transcript where we told the defendants, at page 166, that once your questions are completed, we will videotape our questions.

There's a stipulation that was entered here, Your Honor, on page 166. I'll be happy to hand it up to Your Honor. It is fundamental, Your Honor. These defendants are asking this Court to be the first Court in the country to prevent an in extremis de bene video testimony.

I know it's probably not the best defense, but this is custom and practice, Your Honor.

And we do have a pending motion to remove -- I'm sorry -- to remand this case back to State Court. I don't see a down side here to allow this gentleman to preserve his video testimony. And once it's completed, and Your Honor said this five minutes ago, all objections are preserved to the time of

trial. We know if this goes back to State Court, that this won't be an issue; maybe it's more of an issue in Federal Court; that's Your Honor's decision. But I am guardedly optimistic that the plaintiffs have a chance to have this case remanded to State Court.

I've represented probably 300 people with mesothelioma in my 18 years of being a lawyer. If this man makes it till Friday, I think he'll be very fortunate. Time is of the essence. And everyone knew a video was going to be taken. I've never heard of a video not being taken in this litigation, Your Honor.

THE COURT: What I'm not understanding is why wasn't there arrangements made, prior to the taking of the discovery deposition, to have his video taken?

MR. COMERFORD: I think we did, Your Honor. Can I hand you up the notice that I initially served? And I have a case from Federal Court, a Federal Court decision I brought over. And it's the Marmelshtein, M-A-R-M-E-L-S-H-T-E-I-N case. The cite is 210 Westlaw 422667. If you initially tell the defendants you're going to videotape, which we did, we didn't hide the ball on this at all, we had a videographer there, in case we finish it, maybe we'll do it immediately the next day.

THE COURT: Was the whole discovery deposition videotaped?

MR. COMERFORD: No, none of it was, Your Honor.

THE COURT: That's what I'm having a hard time understanding; why not?

MR. COMERFORD: Well, because the defendants like to ask questions, Your Honor, outside the videotape. The way this litigation has always been done, whether you're in Federal Court or State Court, is the defendants have a fair and full opportunity to depose the client with their questions. And these defendants, the great majority were very reasonable, they realized how sick the plaintiff was, they took their time, which they have a right to. And one of the reasons this took eight days to complete, is the deponent could only go an hour or so in the morning, an hour or so in the afternoon. There is no surprises, Your Honor, here. It's done in every case you videotape, but the defendants have a right to question first.

And a stipulation was read into the record that we could do this, with Lockheed Martin, where we said we're going to videotape at the end, once your questions are done.

THE COURT: Are we talking about your examining the plaintiff as the result of the defendants having completed their examination, or did you do that as the discovery deposition, and now you want to start afresh with a trial deposition?

MR. COMERFORD: Correct, Your Honor. We asked

questions, which we're entitled to. It's a deposition. Last time I checked, both sides get to ask questions under a deposition. We asked very few questions under the deposition. So the record was complete. The record's now complete. This gentleman is going to pass soon. So now we want to preserve a trial testimony. And --

THE COURT: Well, the trial testimony is preserved, in the sense that Rule 30 and Rule 32 provide for the use of a discovery deposition at trial of a party.

MR. COMERFORD: But Your Honor knows, as a skilled trial attorney for many years, a cold transcript isn't a videotape.

THE COURT: I don't disagree with you there, and that's why I'm having a hard time understanding why somebody, including I guess the plaintiff, saying I want this whole deposition, this discovery deposition videotaped.

MR. COMERFORD: What --

THE COURT: Because my client might not be around.

MR. COMERFORD: Well, because we -- and I'll hand it to Your Honor -- a stipulation was entered. And the stipulation was, let us ask our questions outside the videotape.

THE COURT: But you didn't have to agree to it.

MR. COMERFORD: We didn't have to, but, Your Honor, we like to resolve disputes so we don't have to hang the Court

up.

THE COURT: And now I'm in a big dispute.

MR. COMERFORD: And the defendants are asking this Court to be the first Court in the country to stop a video testimony of a dying plaintiff. And I'm a little shocked that they're doing this after we've entered the stipulation on page 90, that said let us ask our questions outside the video; when you're done, you can videotape your video trial testimony.

Again, Your Honor, I implore the Court to give this man an opportunity to be heard, an opportunity to make his case. We'll provide the video testimony at the end. And if this case is remanded -- I'm not trying to be presumptuous -- if it's remanded to State Court, this issue's moot. This issue is moot. It will be admissible in State Court; I have very little doubt in my mind.

THE COURT: Did any of the other defendants object to that stipulation?

MR. COMERFORD: Not here on the record.

THE COURT: Okay. Mr. Bromberg? Lockheed?

MR. BROMBERG: Your Honor, Mr. Glazier has stated for Lockheed.

THE COURT: I'm sorry, Lockheed's attorney. Was there a stipulation?

MR. GLAZIER: Your Honor, this is Guy Glazier. I'm sorry, it's a little difficult to hear. Did you ask me a

question, Your Honor?

THE COURT: Yes. I asked whether there, in fact, was a stipulation entered into between counsel for the plaintiff and counsel for Lockheed that there would be videotaping of the plaintiff after the defendants completed their questions.

MR. GLAZIER: I'm glad you raised that, Your Honor. There was a stipulation placed on the record about day two. I was present. We stipulated that plaintiff's counsel would waive the seven-hour limitation so that the deposition could proceed. And in exchange for that, plaintiff's counsel would be allowed at that deposition to conduct their videotaped examination of the plaintiff. And plaintiff's counsel there that first couple of days and then the days following, continued to assert that they would conduct their examination at an appropriate time. And we were all being very cooperative about that. At any time that plaintiff's counsel felt that defense counsel were taking too long, we all agreed that they could then jump in and do their examination on the videotape.

And, in fact, when plaintiff's counsel was given the opportunity to ask questions, the first thing plaintiff's counsel did -- and I believe this is in the transcript portions that we provided to the Court -- the first thing that they did was said they want to check their notes and see how they want to proceed.

Then they were asked, off the record, before we went back on the record they were asked, do you want me to turn the video camera on? And plaintiff's counsel specifically said no, that's okay. And then they went on the record, took ten pages of transcript, examined the witness. And then they were asked very specifically, do you have anything further? Does defense counsel have anything further? Everybody said no.

And as Mr. Comerford has said, this deposition was noticed day to day. This deposition finished up on a Thursday morning, Your Honor. We were all there in Florida to go Thursday, Friday and, if necessary, the following Monday. And in the transcript, plaintiff's counsel states, this deposition, if it does not complete today, meaning that Thursday when it did complete, it will continue on Friday and on Monday. We were all prepared for that, Your Honor.

This is absolutely, with all due respect to plaintiff's counsel, this is absolutely brand new information, and this is a classic bait and switch. We all left knowing that that deposition was completely over.

THE COURT: Was there a video camera present during the time period the discovery deposition was taken?

MR. COMERFORD: Yes, Your Honor, there was.

THE COURT: Could you have then videotaped your examination of the plaintiff when everyone was in Florida?

MR. COMERFORD: I'll look at the stipulation, but I

thought the stipulation was we'd videotape when everything was done. I'll be happy to hand the stipulation up to Your Honor.

THE COURT: No, but my question is, could you have videotaped your examination of the plaintiff when the defense -- the defendants had completed their questioning of the plaintiff?

MR. COMERFORD: Sure it was possible, Your Honor, but the --

THE COURT: Then why didn't you do it then?

MR. COMERFORD: Because the plaintiff -- I have pictures of him -- was completely wiped out physically --

THE COURT: No, but they said the next day, Friday, or Thursday, Friday or Monday.

MR. COMERFORD: Well, I think when it comes to trial testimony, Your Honor, which we're seeking to do, it's fundamental that people usually take one to two breaks. Under the State rules, the local rules here, and I know it's State Court, I have to give the defendants a week's notice so they can get all the transcripts and they can prepare accordingly.

THE COURT: Wait a minute. Wait a minute. Obviously you and all the other attorneys were aware that, one, there was a video camera present and available; two, that you had told defense counsel and defense counsel had agreed by stipulation, at least Lockheed, and apparently nobody objected, that upon completion of the defendants' examination

of the plaintiff, you would have the right then to question your client, which is the ordinary course of business. After the defense deposes the plaintiff, plaintiff's counsel can try and rehabilitate or fill in any gaps or holes or cover whatever needs to be covered by asking questions of the plaintiff as well. And that under that stipulation, as I hear at least counsel for Lockheed argue, and what I heard you read, you would have the right, when you did that, to also have it videotaped.

MR. COMERFORD: And --

THE COURT: And that's why the camera was there. And that you did conduct an examination of the plaintiff, and then everybody concluded the deposition and left town.

Why should you now be allowed to conduct another deposition, when you had the opportunity to do what you're asking to do now?

MR. COMERFORD: Your Honor, two things. It's hard for me to say this, because it didn't happen, but I know there would have been vociferous objections, had we done the video.

THE COURT: Why? There was a stipulation.

MR. COMERFORD: Well, the stipulation was we get to do the video testimony when the deposition is completed.

THE COURT: The questioning by the defendants.

MR. COMERFORD: And what has always been the custom in this litigation, in almost every case, is you take a short

adjournment between the discovery and the video.

I think within three hours of completing the discovery deposition, I sent an e-mail saying now that the discovery deposition -- and this is how it's done in every case, Your Honor -- now that the discovery deposition is completed, we'd like to do the video Wednesday. Here's my notice. Please call me if there's a problem. In 18 years I've never had a problem. There's a first for everything, and I guess this is the first.

THE COURT: Are you saying this is always done within a matter of days after the discovery deposition is completed? Or, as my experience was when I practiced for 39 years, it would occur after the discovery deposition was completed, there were all kinds of other things that went on, motions, et cetera, and maybe six months, six weeks, maybe a year, somebody says, oh, my, my plaintiff is failing, we've got to now get a trial deposition.

I must confess, I have never been faced or heard of a situation where somebody wants to take the second deposition within days after completing the discovery deposition.

MR. COMERFORD: Your Honor --

THE COURT: Especially when there was a camera available to videotape it.

MR. COMERFORD: Your Honor, if I ever tried to complete the in extremis trial testimony immediately after the

deposition, in 99.9 percent of my cases I'd love to do it, but the defendants get very upset, they say, hey, we need the transcript of the discovery dep to prepare.

THE COURT: But here, they stipulated. They were willing to do it.

MR. COMERFORD: Well, I'm not sure that's clear. They just said after the discovery dep. And in the 18 years I've been doing this, after the discovery dep universally means a week later. And I apologize I didn't pin that down, but I can't imagine why a defense lawyer would want to complete a video testimony within minutes of the deposition being done; it's not even transcribed. I said to myself, how could they even begin to cross-examine my client?

THE COURT: I could see doing that, from a tactical point of view, so that I wouldn't let the plaintiff's attorney and the plaintiff get together and review all of the questioning of the defendants, and I'd rather have it done right now.

MR. COMERFORD: Here in Upstate New York there's CMOs that even prevent me from doing the video testimony immediately thereafter, because --

THE COURT: That's State Court.

MR. COMERFORD: I know it's State Court, Your Honor, but I'm so entrenched in that custom, I thought I would engender such hostility if I tried to do the video immediately

thereafter. So I thought I was actually doing all the parties a favor. I sent them a thank you note for cooperating in deposition. I said we'll do it a week later, here's the time, the location, please let me know if there's going to be an objection. One defendant has objected.

Had I known that they wanted us to do the video testimony immediately thereafter, I think we would have preferred to have done it right then and there, because we were all there. I just assumed the defendants -- because they always tell me this in every case -- they want time to get the discovery dep so they can read it and make decisions about cogent cross-examinations.

You know, Your Honor, this reminds me that old expression my grandfather used to say, "No good deed goes unpunished." I guess I should have pushed aggressively to do the video at that moment. But the defendants had acted in really good faith in running down there, getting his deposition done. In almost any case I've ever been involved in, we've always done the video at least a week later. Occasionally -- I can think of one case where the plaintiff was so ill, I said to the defendants, I want to do the video testimony. I'll get the name of the case. His name was Robert Vogt. State Court action. V-O-G-T. The defendants were quite upset, it was Friday at like 7:00 o'clock, he lived in North Tonawanda. Miss O'Connor was there, and I said, Bonnie, I hate to do

this, but I have to go forward with the video; he's about to meet St. Peter. And if I don't preserve this testimony, it's never going to get taken. She goes, we have a right to a week between. I said, I know you do; let me do the testimony, put your objection down. The defense put their objections down, and lo and behold, Mr. Vogt passed away, I want to say 48 hours later over the weekend.

THE COURT: If I were to allow you to take this video deposition, you're basically going to examine your client in the context of his proposed trial testimony.

MR. COMERFORD: Absolutely, Your Honor.

THE COURT: And would you then agree that the defendants would then have a right to cross-examine him?

MR. COMERFORD: Of course, that's fundamental.

THE COURT: I want to make sure we're all clear on this.

MR. COMERFORD: That's fundamental. This should be a level playing field. We all have a right to preserve our evidence. And, you know, Your Honor, this may all be moot, because I hope he can make it, my co-counsel is there with the family now, and he's hanging on by a thread.

So I urge Your Honor to let us get this done. I implore the Court. I don't use those words lightly. This man has a right to plead his case.

THE COURT: When would he be ready to go, assuming

he --

MR. COMERFORD: Tomorrow morning.

THE COURT: I gather this is in Florida.

MR. COMERFORD: It is in Florida, I noticed it for Wednesday, they have direct flights. I don't think he'll make it Thursday or Friday. I hope he makes it tomorrow. Time is of the essence, Your Honor.

THE COURT: Counsel for Lockheed?

MR. GLAZIER: Your Honor, it's fairly difficult to hear Your Honor, but I'll do my best to respond to what I think I can hear from your questions, from the Court's questioning of Mr. Comerford.

It appears that Mr. Comerford is arguing from a perspective of this is the way I've always done things throughout my practice, which is very interesting, but it isn't the rules. It's not the Federal Rules. And if he thinks that this Court is now doing something new, he's mistaken. I practice around the country in Federal Court, and it's often that Federal Courts step in. And, in fact, as recently as last month a Federal Court in Connecticut stepped in and said no, plaintiff's counsel, you're not going to take a second deposition of your client. The Federal Rules are very clear how this procedure works.

The point about perhaps this case is going back to State Court, I am just as comfortable as Mr. Comerford is that it is

going back to State Court, that it is not going back to State Court.

There is clear indication that the plaintiff has invoked claims that will raise our federal defenses, and we are entitled to federal officer jurisdiction in this case. This case is going to stay in Federal Court.

To the extent that it's not, that doesn't really matter anyway, because the case is in Federal Court now, and it was in Federal Court when plaintiff's counsel noticed the deposition originally. And when they noticed it originally, as the affidavit from Dr. Salier stated, they knew exactly what they were facing in terms of their client's life expectancy. It's all very sad, but it's all very true, and it was still true at the time of the original deposition.

This boils down to, as the Court indicated originally, the interests of justice. Economic judicial economy, the strategic and tactical decisions, some of which the Court has, I believe, articulated today in this hearing, are very important in this case. And we expect and intend to capitalize on those tactical and strategic decisions, both that we made and the plaintiff's counsel made in the deposition. They clearly had opportunity, and opportunity is the gravamen of the Federal Rules that govern this proceeding, the opportunity to conduct the examination. Not only did they have that opportunity, they took it. They took that

opportunity, and then they affirmatively closed and concluded this deposition.

THE COURT: Was there a formal closing of the deposition?

MR. COMERFORD: Of this deposition, Your Honor, which is not video trial testimony, there was a closing of this deposition. But everyone knew, Your Honor, we were going to do a video testimony in this case. My initial notice says that, Your Honor. It's a separate proceeding to preserve his testimony.

THE COURT: And that stipulation is set out in the record?

MR. COMERFORD: I think so, Your Honor, yes. I mean, there's a dispute about what "over" means, but yes.

THE COURT: All right. I'm looking at Rule 30(4)(C), which provides that, "At the end of a deposition, the officer must state on the record that the deposition is complete and must set out any stipulations made by the attorneys about custody of the transcript or recording and of the exhibits, or about any other pertinent matters."

I deem this a pertinent matter. What I want you to do is to get me the actual stipulation from the record, get it to my law clerk. I'm going to decide this -- I'll decide this issue between now and 3:00 o'clock this afternoon, and have it out electronically. It will just be a text order one way or the

other.

I'll treat this whole situation as an oral application or a motion to be allowed to conduct the videotaping of a de bene esse deposition for use at trial.

And then I note the objection of Lockheed with respect to same as far as the motion.

And I will then decide whether I'm going to allow for that deposition as a trial deposition to take place as quickly as is reasonably possible for counsel, if that's what I order. All right?

MR. COMERFORD: Thank you, Your Honor.

THE COURT: Thank you. So make sure that we get that stipulation from the transcript.

MR. COMERFORD: I have it here, Your Honor.

THE COURT: All right. You can give it to my law clerk.

MR. COMERFORD: What I'll do is the transcript's eight -- there's eight days of it. This --

THE COURT: No, I just want the stipulation.

MR. COMERFORD: I think -- unfortunately, with eight days of testimony, Your Honor, sometimes people put stipulations on throughout the day. I think I have the pertinent testimony, I'll give the full transcript, I have the page --

THE COURT: I want you to cull out what you say is

the actual stipulation.

MR. COMERFORD: Okay.

THE COURT: Then let me law clerk have it, what you have culled.

MR. COMERFORD: Thank you.

THE COURT: All right? Thank you.

MR. GLAZIER: Your Honor, this is Mr. Glazier. Is the Court asking for the stipulation --

THE COURT: I'm sorry, hold it. Hold it. I didn't hear you. Do you want to repeat that?

MR. GLAZIER: This is Mr. Glazier. Is the Court asking for the stipulation that was placed on the record in this case on day two of the deposition?

THE COURT: Yes.

MR. GLAZIER: Okay. Thank you, I just want to be clear on that. And we can also provide that to the Court, no problem.

THE COURT: Okay. Thank you.

(Court adjourned at 12:05 p.m.)

REPORTER'S CERTIFICATION

I, Debra L. Potocki, RMR, RDR, CRR, Official Court Reporter for the United States District Court for the District of South Carolina, hereby certify that the foregoing is a true and correct transcript of the electronically recorded above proceedings, to the best of my ability.

S/Debra L. Potocki

Debra L. Potocki, RMR, RDR, CRR